SIXTH DIVISION
February 16, 2018

No. 1-16-2469
2018 IL App (1st) 162469

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| ESTATE OF SCOTT G. HUDSON, Deceased, By MATTHEW CARUSO, Its Successor Administrator, and KYLE HUDSON, | ) Appeal from the ) Circuit Court of ) Cook County. ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) No. 15 L 12518 ) |
| DOUGLAS C. TIBBLE and BROOKS, ADAMS & TARULIS, | ) ) ) Honorable |
| Defendants-Appellees. | ) William Gomolinski, ) Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Cunningham and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the Estate of Scott G. Hudson, by Matthew Caruso, its successor administrator (the Estate), appeals the trial court's orders that granted the motion for summary judgment brought by defendants, Douglas C. Tibble and Brooks, Adams & Tarulis, and denied the Estate's motion to reconsider. Defendants' motion asserted that the Estate could not maintain a cause of action for legal malpractice because defendants were hired by and represented the former administrator of the Estate, and were never the attorney for the successor administrator of the Estate. We find that the trial court improperly granted summary judgment where defendants owed a duty to the Estate and a genuine issue of material fact existed regarding whether

defendants breached their duty. Therefore, we reverse the decision of the trial court and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3      Scott G. Hudson (decedent) died intestate on February 17, 2005, with only two heirs: Alma Leticia Hudson (Letty), his wife, and Kyle Hudson (Kyle), his son from a previous marriage. When the decedent passed away, he left an estate consisting of various assets located in a number of countries, totaling multiple millions of dollars. A probate case was opened in Du Page County, and Letty was appointed the administrator of the decedent's estate on February 28, 2005. Letty subsequently retained defendants as counsel in April 2005, and they filed their appearance in the probate case on May 10, 2005. Specifically, defendants' appearance stated that they were appearing as substitute counsel[1] for Letty, and that they were "Attorney for: Administrator."

¶ 4      The primary disputed asset in the probate case was Chicago Minibus Travel, Inc. (bus company), a lucrative business that Kyle claimed was part of the Estate, which would provide him with 50% ownership as one of only two heirs, and that Letty asserted was hers individually, which would provide her with 100% ownership. Kyle, through his mother and guardian, Joann Hudson, filed petitions for discovery citations alleging, *inter alia*, that Letty was dissipating the Estate's assets, withholding assets from Kyle, and attempting to destroy computer files related to her malfeasance. Further, the decedent's brother, Stephen J. Hudson, and Kyle, through Joann Hudson, filed numerous petitions to remove Letty as the administrator of the Estate, alleging many of the same arguments made in Kyle's previous petitions, including mismanagement, waste, and conversion. The record on appeal does not contain the complete record from the

_____

[1] Defendants appeared as substitute counsel because Letty had other counsel prior to defendants filing an appearance on her behalf.

probate case but it contains some filings from that case. At some point during the numerous petitions to remove Letty as administrator, defendants filed a motion to strike and dismiss one of the petitions to remove Letty and a reply in support thereof. The motion and reply were brought by "The Estate of Scott G. Hudson, by its Administrator Alma Leticia Hudson ('Estate') through its attorney Douglas C. Tibble of Brooks, Adams and Tarulis." Similarly, defendants also wrote on at least one order that they were the "Attorney for: Estate of Scott Hudson."

¶ 5    Eventually, on July 26, 2007, Letty agreed to resign as administrator, and Matthew Caruso was appointed the successor administrator for the Estate. Defendants continued to represent Letty in her individual capacity, and after their motion to withdraw as counsel was repeatedly continued, defendants were finally granted leave to withdraw on July 22, 2008.

¶ 6    On May 28, 2009, Kyle and the Estate (collectively, plaintiffs) filed the lawsuit underlying this appeal in the circuit court of Cook County as case No. 09-L-6267, alleging defendants committed legal malpractice by mismanaging the Estate and placing themselves in a conflict of interest with the Estate through their representation of Letty, both as administrator and in her individual capacity as an heir. Plaintiffs alleged that defendants also represented the bus company, which was a highly disputed asset. On June 18, 2009, Letty filed her own legal malpractice complaint against defendants as case No. 09-L-7149, which was consolidated with plaintiffs' earlier-filed case. According to the parties' briefs and an allegation in plaintiffs' third amended complaint, the probate case was resolved in February 2009, with November 4, 2008, as the effective date of settlement. The record on appeal does not contain a copy of the parties' settlement agreement.

¶ 7    Plaintiffs filed various iterations of their complaint until their third amended complaint (filed in September 2013 in case No. 09-L-6267) became the operative pleading against which

defendants would eventually file the summary judgment motion that led to this appeal. Plaintiffs' third amended complaint was brought by "Matthew Caruso, as Successor Executor of the Estate of Scott G. Hudson and Kyle Hudson" against defendants, and contained three counts. The first count was brought by the Estate against defendants and alleged legal malpractice. Counts II and III, which were pled in the alternative, were brought on behalf of Kyle for breach of fiduciary duty and legal malpractice, respectively. Plaintiffs' complaint alleged that, "In or about April of 2005, Defendants were retained to represent, administer, and probate the Estate by the then-administrator and additional beneficiary (as wife of the decedent at the time of his death) of the Estate, Alma Leticia Hudson ***." The complaint further alleged that, "[u]pon being retained to represent, administer, and probate the Estate, Defendants owed the Estate the duty to exercise that degree of skill, learning and diligence as would be ordinarily employed by reasonably well-qualified attorneys specializing in similar matters." The complaint asserted that defendants breached their duty by "(a) failing to act in a timely manner to determine all Estate assets and the value of said assets; and (b) failing to conduct a proper investigation to determine all assets of the Estate." More specifically, the complaint alleged that in addition to representing the Estate, defendants also agreed to represent Letty's individual interests as a beneficiary, which created a conflict of interest due to the conflict over the bus company's ownership, and that defendants advanced Letty's interests as a beneficiary over that of the Estate. The complaint also alleged that defendants failed to timely pay certain taxes and that defendants failed to sell the decedent's home in a timely manner, which caused the property to be sold for less than it would otherwise be worth.

¶ 8    Subsequently, Letty filed a petition for bankruptcy, and as a result, the consolidated cases were placed on the bankruptcy stay calendar. On December 11, 2015, the consolidated matters were removed from the stay calendar and administratively renumbered as case No. 15-L-12518.

¶ 9    On January 25, 2016, the trustee for Letty's bankruptcy estate and defendants entered into a stipulation to dismiss Letty's claim with prejudice and on February 1, 2016, an order dismissing Letty's case with prejudice was entered.

¶ 10    Defendants filed their answer to plaintiffs' third amended complaint on June 27, 2016. In response to plaintiffs' duty allegations, defendants' answer stated: "The Defendants admit that they owed the Estate a duty of care arising from the attorney-client relationship but deny that Paragraph 9 of Count I of Plaintiffs' Third Amended Complaint fully and/or accurately sets forth that duty." Defendants denied most other allegations related to the Estate's legal malpractice count.

¶ 11    On February 29, 2016, defendants filed their motion for summary judgment, and on March 14, 2016, they filed a memorandum in support thereof. Defendants' motion argued that both the Estate's claim for legal malpractice and Kyle's claims for legal malpractice and breach of fiduciary duty should be summarily dismissed, but because Kyle has not filed an appellant's brief and has not moved to join in the Estate's brief, we need not address the bases upon which defendants' motion was directed at Kyle. As to the Estate, defendants' motion argued that an attorney-client relationship did not exist between defendants and the Estate and defendants, therefore, never owed a duty to the Estate because their client was Letty, the person who retained defendants. Specifically, defendants asserted that the Estate was an intangible legal fiction incapable of acting and thus incapable of being the client. Defendants argued that their client was Letty and her "administration," not the successor administration. Defendants also stressed that

there was not a single case in which a legal malpractice case was brought with an estate as plaintiff. Further, defendants asserted that the Estate was not a party to or an intended beneficiary of their representation of Letty. Defendants attached a copy of their engagement agreement with Letty, dated April 19, 2005. The engagement agreement listed the client as "Alma Leticia Hudson."

¶ 12     Plaintiffs filed their response to the motion for summary judgment on April 22, 2016. As previously mentioned, although the response was filed on behalf of both plaintiffs, we address only points relevant to the Estate. The Estate argued that defendants owed a duty to it. Namely, the Estate contended that a probate estate is capable of suing for legal malpractice as evidenced through numerous Illinois cases. Also, the Estate emphasized that the relevant entity here is the Estate, not the Letty administration or the successor Caruso administration, and asserted that defendants' position to the contrary is not supported by Illinois law. Further, the Estate argued that merely because the two administrators took differing positions regarding what qualified as estate assets, defendants' duty to the Estate was not eliminated.

¶ 13     Defendants' reply in support of their motion for summary judgment was filed on May 6, 2016, re-arguing that defendants did not owe the successor administration a duty of care as a matter of law because there is no case law establishing that an attorney has a duty of care to an estate as though it were a plaintiff in a legal malpractice case.

¶ 14     On May 27, 2016, the court held oral argument, granted defendants' motion, and entered judgment in defendants' favor. The record on appeal does not contain a report of proceedings for this hearing, and the order does not state the basis upon which the motion was granted.

¶ 15     Plaintiffs filed their motion to reconsider on June 27, 2016, arguing that it was error for the court to determine that defendants did not owe a duty to the Estate because it was undisputed

that defendants filed their appearance on behalf of the Estate, filed an attorneys' lien against the Estate, and represented the Estate itself. Plaintiffs further asserted that the court erred in accepting defendants' argument that each administrator of the Estate was a separate entity. Additionally, plaintiffs stated that "[a]t oral argument, the court appeared to suggest that [d]efendants never represented the Estate of Scott Hudson," and argued that the court ignored the well-settled rule that the lawyer for an estate has a duty to the estate. Plaintiffs also noted that defendants admitted that they had a duty to the Estate in their answer.

¶ 16     In their August 9, 2016, response to plaintiffs' motion to reconsider, defendants argued that the motion should be stricken because plaintiffs raised arguments and presented evidence that was not before the court when it previously ruled on defendants' motion for summary judgment. Additionally, defendants stressed that any characterization of the summary judgment hearing should be ignored since plaintiffs failed to present a transcript or bystander's report of those proceedings. In the alternative, defendants argued that the motion should be denied on its merits because plaintiffs failed to raise a principled argument that would establish that the court erred in its previous application of the law to the undisputed material facts. Defendants also asserted that had plaintiffs argued in response to the summary judgment motion that defendants admitted they owed a duty to the Estate in their answer, then defendants would have sought to amend their answer because they inadvertently used the words "the Estate" when referring to whom a duty was owed as a "term of convenience." To support this argument, defendants note that later in their answer, they denied representing the Estate.

¶ 17     Plaintiffs' reply in support of their motion to reconsider was filed on August 15, 2016, arguing that the engagement letter that defendants had presented in support of their motion for summary judgment did not limit defendants' representation to Letty individually. Plaintiffs also

argued that when defendants filed their appearance, they did not limit their appearance to Letty individually and defendants sought to recover their attorney fees from the Estate, which they would not have been able to do unless they represented the Estate.

¶ 18    The court heard oral argument on plaintiffs' motion to reconsider on August 30, 2016. The court expressed its dissatisfaction that no transcript was created at the hearing on defendants' motion for summary judgment and summarized its primary finding from that hearing as follows:

> "I think I said that the lawyer represented the administrator and that it couldn't—you couldn't purely represent the estate without the administrator because the client is the administrator. Because the lawyer has to seek direction and control from somebody. And that person has to be the administrator. I understand your concept. But I don't know how we practically put that into motion without having a client who is the administrator."

The court also recognized that the administrator hires an attorney and the administrator represents the estate but that the estate holds the money that pays the attorney; thus, the question becomes "where does the duty go?" In rejecting plaintiffs' argument that defendants were required to withdraw from representing Letty, the Estate, and the bus company, the court stated that when a contested issue is involved, "[an attorney] still owe[s] [a] fiduciary duty to that administrator who hires [the attorney] and to what you call the organization which in this case is not an organization but is an estate. It's *in rem*. It's property. And [an attorney] owe[s] nothing potentially to those fiduciaries unless [that attorney] cause[s] that *in rem* estate loss." The court ultimately denied plaintiffs' motion to reconsider.

¶ 19    Plaintiffs filed their timely notice of appeal on September 20, 2016. Although both the Estate and Kyle filed the notice of appeal, only the Estate filed an appellant's brief, which Kyle

has not joined. Thus, our decision herein applies only to the Estate, and Kyle's claims remain dismissed irrespective of the outcome of this appeal.

¶ 20                                                                    ANALYSIS

¶ 21     The Estate argues that the trial court erred when it granted defendants' motion for summary judgment because defendants owed it a duty of care when they were retained by Letty, the original administrator, to assist in the administration of the decedent's estate. We agree that a duty existed, and find that a question of fact regarding the alleged breach thereof exists; thus, summary judgment was not proper.

¶ 22     Summary judgment should be granted if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The purpose of a summary judgment motion is not to try a question of fact but to determine whether a genuine issue of material fact exists. *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 367 (2007). Although summary judgment may aid in the expeditious disposition of a case, "it is a drastic measure and should be allowed only 'when the right of the moving party is clear and free from doubt.' " *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). Our standard of review is *de novo*. *Id.*

¶ 23     In order "[f]or a plaintiff to prevail on a legal malpractice claim, he must plead and prove that his counsel owed him a duty arising from the attorney-client relationship, that counsel breached that duty, and that as a proximate result of the breach, he suffered an injury." *Estate of Powell ex rel. Harris v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 14. Looking at the first element, the Estate argues that defendants owed it a duty, but defendants deny that they did. In order to find that defendants owed a duty to the Estate, an attorney-client relationship must

have existed between them or the Estate must have been an intended beneficiary of such a relationship. *Id.* ¶ 16. Neither party raises the argument that the intended beneficiary exception applies, thus we need not explore such a possibility.

¶ 24    At the outset, it is pertinent to note that we are not faced with the question of whether an attorney owes a duty to the beneficiaries of an estate where, as here, the only plaintiff remaining in the lawsuit is the Estate. Thus, we must first determine whether Illinois law recognizes the general proposition that an attorney owes a duty to an estate when said attorney is hired by the estate's representative for the purpose of administering a decedent's estate. Defendants argue that the cases that support the existence of such a duty are mere "sound bite citations." However, we disagree because Illinois cases have consistently recognized that an attorney owes a duty to an estate. See *Gagliardo v. Caffrey*, 344 Ill. App. 3d 219, 229 (2003) (even if an attorney only acted as the attorney for an estate for a limited time, he nonetheless owed a duty to the estate); *In re Estate of Vail*, 309 Ill. App. 3d 435, 441 (1999) (attorney for executor does not have attorney-client relationship with a will's beneficiaries, thus the attorney may represent the estate against a challenge by a beneficiary because attorney for executor "owes allegiance only to the estate"); *In re Estate of Kirk*, 292 Ill. App. 3d 914, 922 (1997) (although attorney had a duty to protect the estate and the interest of the beneficiaries, he did not have an attorney-client relationship with the heirs).

¶ 25    Defendants argue that these cases are inapplicable because they do not involve the exact factual situation involved here. Such an argument is irrelevant when we are relying on said cases for the purpose of determining whether an attorney hired by an estate representative owes a duty to the estate, not just the representative that hired the attorney. We believe it comports with common sense that an attorney would owe a duty to an estate, rather than just to the person who

retained them, because it is likely that in many (if not most) cases, the estate representative is not also a beneficiary of the estate, as Letty was here. If, for example, Letty was solely the administrator, and not also a beneficiary, then it would seem inherent that any attorney she retained would have a duty to the Estate because "[t]he purposes of administering an estate are to conserve the personal assets of the estate, including the collection of all debts due to the decedent; to pay all debts and taxes owed by the decedent and [his] estate; and to properly distribute the residue among the heirs at law according to the terms of the decedent's will or, absent a will, the statute of descent and distribution." *In re Estate of Lis*, 365 Ill. App. 3d 1, 9 (2006). Further, it generally is the duty of the administrator to perform these tasks, "and, in doing so, [he] should carry out the wishes of the decedent and act in the best interests of the estate." *Id.* Given that the relationship between an administrator and a beneficiary is "fiduciary in character" (internal quotation marks omitted) (*id.* at 9-10) and the primary duties of the administrator are to collect and pay debts and to distribute any remaining assets to a decedent's heirs, it perplexes this court how any attorney retained to assist in that purpose would not correspondingly owe a duty of care to that estate.

¶ 26    As a brief aside, defendants somewhat confusingly argue that the Estate has failed to cite any cases in which a legal malpractice claim has been brought by an estate, yet in their brief, defendants acknowledge that they "have never contested the Caruso Administration's standing to sue." "The well established rule in this state is that an estate lacks the capacity to sue or be sued, and any action must be brought by the executor or representative of the estate." *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 32. Here, the complaint and all subsequent motions or responses thereto brought on behalf of the Estate have been filed by the

Estate of Scott G. Hudson by Matthew Caruso, its successor administrator.[2] Thus, the Estate has clearly complied with the well-settled rule that any action be brought through its representative, which in this case is the successor administrator. Contrary to defendants' assertions, the complaint here was not filed solely on behalf of the intangible probate estate; rather, the complaint was filed by Caruso as successor administrator of the Estate, which is entirely proper.

¶ 27    In the same vein, defendants further argue that a probate estate is an intangible, fictitious entity to which it would be impossible for a duty to be owed. We reject defendants' argument that a duty cannot be owed to a legal fiction because a corporation, which is also not a flesh and blood person but, rather, is an "artificial legal entity" (*Campen v. Executive House Hotel, Inc.*, 105 Ill. App. 3d 576, 585 (1982)), is not prevented from filing a legal malpractice claim. See *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240 (1994) (legal malpractice action filed by a corporation against its former attorneys). Further, we note that in *Kirk*, the court recognized that "[an] executor owes a fiduciary duty to the estate." *Kirk*, 292 Ill. App. 3d at 919. Thus, if a duty can be owed to an estate by the estate representative, then it seems logical that it would also be possible for an attorney to owe a duty to an estate, regardless of whether it is a legal fiction.

¶ 28    Because it is well-established that an estate can act through its representative, it seems that defendants actually intended to argue that no attorney-client relationship existed between them and the Estate; thus, a claim for legal malpractice could not be established. The parties cite cases from other states to support their arguments.

---

[2]We note that plaintiffs' third amended complaint actually states "Matthew Caruso, as Successor Executor of the Estate of Scott G. Hudson," however subsequent motions refer to Caruso as the successor administrator, which is proper given that the decedent died intestate. However, for purposes of continuity we refer to Caruso only as the successor administrator.

¶ 29 The Estate relies on *Bookman v. Davidson*, 136 So. 3d 1276, 1279 (Fla. Ct. App. 2014), wherein a Florida court addressed the issue of "whether a successor personal representative of an estate may bring a cause of action for legal malpractice against an attorney hired by her or his predecessor to provide services necessary to the administration of the estate." The court resolved that issue in the affirmative, finding that standing existed. *Id.* at 1280. The Estate also cites *Borissoff v. Taylor & Faust*, 93 P.3d 337, 340-41 (Cal. 2004), a California case that held that a successor representative's "power to sue for malpractice is no different than the successor's power to sue for nonperformance a person hired by the predecessor to fix the roof of a house belonging to the estate." In reaching its decision the court acknowledged a California statute that afforded a successor representative the same powers and duties as the predecessor, including the power to sue; thus, any question regarding standing had been resolved by the legislature. *Id.*

¶ 30 Although we agree with the logic and ultimate holdings in *Bookman* and *Borissoff*, we find them inapplicable here where defendants do not contest the Estate's standing to sue. Specifically, defendants state that they "have never contested the Caruso Administration's standing to sue." However, their characterization of the Estate as two separate entities, the Letty administration and the Caruso administration, is not supported by law. Defendants do not cite, and we have not found, any cases in which a probate estate is referred to as the administration of its representative. Further, "[u]nder Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). If not raised in a timely manner in the trial court, a lack of standing will be forfeited. *Id.* at 252-53. Here, defendants never contested the standing of the Estate to sue; thus, defendants have forfeited any objection to the Estate's standing.

¶ 31    Defendants rely on *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 1, 105 A.3d 439, wherein the Maine Supreme Judicial Court held that an attorney retained by the original administrator and the successor administrator did not have an attorney-client relationship; thus, no duty of care was owed and summary judgment in favor of the attorney was proper. One of the pertinent facts of that case was that the law firm being sued for malpractice specifically advised the beneficiaries of the estate that it represented the personal representative, not the estate. *Id.* ¶ 3. We decline to rely on *Cabatit* given that there is no evidence here that defendants ever informed Letty, Kyle, or both that they did not represent the Estate. In fact, to the contrary, defendants filed pleadings on behalf of the Estate.

¶ 32    Based on Illinois case law, which makes clear that an administrator is required to act in the best interest of the estate (*Lis*, 365 Ill. App. 3d at 9), it seem axiomatic to this court that when an attorney is retained by an administrator for the purpose of administering the estate, its client is in actuality the administrator and the estate due to the symbiotic nature of their concurrent existence. The administrator only acts to serve the estate, and the estate cannot act but through the name of the administrator. Thus, we find the attorney-client relationship between an attorney and an estate to be inherent when the attorney is retained to assist in the administration of the estate.

¶ 33    Turning back to our analysis regarding whether summary judgment was proper, and having established that Illinois recognizes that, in general, an attorney hired by an estate representative to assist in the administration of an estate owes a duty to the estate, we must now determine whether any question of material fact exists within the unique scenario presented in this case. We find that a question of fact exists regarding defendants alleged breach of duty to the Estate and, thus, summary judgment was not proper. Summary judgment is a drastic measure and

should only be granted when the moving party's right to the requested relief is clear and free from doubt. *Purtill*, 111 Ill. 2d at 240. The basis of our finding is the lack of clarity regarding defendants' representation of Letty, the Estate, and the bus company. As previously mentioned, we do not have the probate record to aid in our decision. Further, we do not have the complete record from the circuit court. Defendants' brief points out that "[n]o record has been prepared of the proceedings that occurred under the original case numbers, 09 L 006267 or 09 L 007149." The Estate does not provide any explanation for its failure to include the entire record. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Nonetheless, defendants do not assert that any documents contained in the record from the previously-numbered matters are necessary to this appeal, and resolving any omissions against the Estate, our ultimate determination does not change.

¶ 34    In spite of the many questions that this court has, we are able to ascertain the following facts. Defendants were retained by Letty, the original administrator of the Estate, and one of two estate beneficiaries. In their engagement agreement with Letty, the scope of defendants' representation is not defined. The purpose for which they were retained is not stated. It is unclear if they were hired in order to assist in the administration of the Estate or if the primary purpose was to advance Letty's individual interests. The principal dispute that arose in the probate case involved the bus company that Letty claimed was her personal asset and that Kyle argued was an asset of the Estate. Defendants do not dispute the Estate's assertion that they advocated for Letty's position that the bus company was her personal asset. However, at various points during the probate litigation, defendants also filed documents on behalf of the Estate. After Letty was removed as the administrator, defendants continued to represent her in her capacity as

beneficiary until they were given leave to withdraw. There is no evidence before this court that the Estate, Kyle, or any other party ever filed a motion to disqualify defendants.

¶ 35 We believe that defendants' position regarding who their client was is illusory, at best. Plaintiff's third amended complaint alleges that "[i]n or about April of 2005, [d]efendants were retained to represent, administer and probate the Estate by the then-administrator." In their answer, defendants respond to this allegation by stating that "the retention letter and agreement referenced by [p]laintiffs is the best evidence of their contents and to the extent that [the allegations of plaintiffs' third amended complaint] deviate[ ] from the contents of those documents, the [d]efendants deny the same." However, as previously mentioned, the engagement agreement lacks detail regarding the purpose for which defendants were hired. Further, at no point do defendants definitively state that they only represented Letty in her capacity as administrator, which would result in a duty owing to the Estate, or that they only represented Letty as beneficiary, which would render their pleadings filed on behalf of the Estate highly suspect. Defendants make much of the adversarial nature of the probate proceedings, which is further discussed below, yet they fail to reconcile how they were able to advance the interests of Letty as beneficiary, represent the bus company, and still fulfill their duty to the Estate, if they were retained to assist in the administration of the estate. It is unclear whether any conflict of interest that may have arisen from their representation of both the Estate with Letty as administrator and Letty as a beneficiary was ever divulged. See Ill. R. Prof'l Conduct (2010) R. 1.7(b)(3), (4) (eff. Jan. 1, 2010) (stating that although a concurrent conflict of interest exists, an attorney may still represent a client if, *inter alia*, "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal" and "each affected client gives informed

consent"). Based on the irreconcilable record before this court, it is impossible to determine whether defendants' conduct breached the duty that they owed to the Estate; thus, we are unable to agree with the trial court's determination that summary judgment was proper.

¶ 36     As a final matter, we find it necessary to address defendants' argument that because this was an adversarial matter, they cannot be held to owe a duty to the Estate. The Estate asserts that even in an adversarial situation, an attorney hired by an estate representative to assist in the administration of the estate is not relieved of his duty to the estate. We agree with the Estate and find that the adversity, extreme as it may have been, did not absolve defendants of their duty to the Estate. "An attorney representing an estate must give his first and only allegiance to the estate when *** an adversarial situation arises." *Kirk*, 292 Ill. App. 3d at 919. Here, an adversarial situation arose regarding the ownership of the bus company, which should have resulted in defendants' first and only allegiance being to the Estate. The parties dispute whether such an allegiance was fulfilled. Thus, we disagree with defendants' contention that the adversarial nature of the probate proceedings prevented the imposition of a duty to the Estate.

¶ 37                                      CONCLUSION

¶ 38     Based on the foregoing, we reverse the decision of the trial court that granted defendants' motion for summary judgment, vacate any judgments entered thereto, and remand for further proceedings.

¶ 39     Reversed and remanded.