2025 IL App (1st) 241667-U

No. 1-24-1667

Order filed October 31, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PURAB KAUR, as Executor of the Estate of Amarpal Singh Matharu, Deceased, PURAB KAUR, individually, and MAYHER KAUR MATHARU, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Law Division. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2021 L 005684 |
| FISCHEL & KAHN, LTD., an Illinois Corporation, ROBERT W. KAUFMAN, individually, and DEBORAH JO SOEHLIG, individually, | ) ) ) ) ) | Honorable Mary C. Roberts, Judge, presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court erred in dismissing plaintiff's legal malpractice claim where the attorneys owed a duty to the decedent's Estate. The circuit court did not err in granting summary judgment on plaintiffs' claims for fraudulent misrepresentation and aiding and abetting where there was no evidence to support allegations of knowledge and wrongful conduct. The circuit court did not abuse its discretion in denying plaintiffs' motion for voluntary dismissal while a summary judgment motion was pending.

¶ 2    Plaintiffs Purab Kaur, individually and as Independent Administrator of the Estate of Amarpal Singh Matharu, Deceased, and Mayher Kaur Matharu, individually, appeal the circuit court's dismissal of their legal malpractice claim and summary judgment in favor of defendants Fischel & Kahn, Ltd., Robert W. Kaufman, and Deborah Jo Soehlig on claims of fraudulent misrepresentation and aiding and abetting. At issue is (1) whether the circuit court erred in dismissing the plaintiff's legal malpractice claim because the attorneys owed a duty to the decedent's Estate; (2) whether the circuit court erred in granting summary judgment on plaintiffs' fraudulent misrepresentation claim because the attorneys acted with reckless disregard to their statements' falsity in submitting an invalid will to the probate court; (3) whether the circuit court erred in granting summary judgment on plaintiffs' aiding and abetting claim because the attorneys knowingly and substantially assisted in the performance of a wrongful act which caused an injury; and (4) whether the circuit court abused its discretion in denying plaintiffs' motion for voluntary dismissal after defendants filed for summary judgment. For the following reasons, we affirm in part, reverse in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4    The facts alleged in the complaint are as follows. In June 2020, Amarpal Matharu was suddenly hospitalized with Stage IV cancer. Due to COVID-19 restrictions, visitors to the hospital were limited. In July, Amarpal contacted Robert Kaufman, an attorney at Fischel & Kahn, to help him prepare an estate plan, specifically a will and trust. Amarpal filled out an estate planning questionnaire indicating that he wanted all his property to go to his daughter, Mayher. Upon receipt of the questionnaire, Kaufman emailed Amarpal to confirm his intent and suggested Illinois law may impact his decision to leave nothing to his wife, Purab. Amarpal responded that he did not

believe Purab would get nothing because, according to him, she would get money from his life insurance policy under their ongoing divorce case. The spouses were in their fifth year of divorce proceedings.

¶ 5     On July 9, 2020, Kaufman sent Amarpal a draft will and trust that left his entire estate to Mayher. Kaufman and Amarpal corresponded with revisions, but Kaufman never confirmed that the documents were signed. Because restrictions at the hospital prevented Kaufman from overseeing the will execution in person, Kaufman continued to follow up via email. On August 13, Kaufman emailed Amarpal, "We did not hear from you after we provided you with the 'final' estate planning documents, so we do not know if you signed them or not *** please let us know."

¶ 6     In September 2020, Kaufman learned from one of the executors named in the will that Amarpal had died. Kaufman asked the executor to send him the will, and the executor did. The executors retained Fischel & Kahn to represent Amarpal's Estate in the probate proceedings, and Fischel & Kahn attorney Deborah Soehlig joined Kaufman in the representation.

¶ 7     Later in September, defendant attorneys filed their appearances in the probate court on behalf of the executors along with a will that appeared to have been executed on July 9, 2020. After realizing the will was only a copy, defendants secured and filed the original document. Purab retained counsel to challenge the will. Purab's counsel notified the Fischel & Kahn attorneys of her concerns about the signatures, date, and presence of witnesses, and the Fischel & Kahn attorneys began investigating the circumstances surrounding the will's execution. After an inquiry and months of litigation, they concluded the will was not validly executed and withdrew it from the probate proceedings in February 2021. As a result, Purab became independent administrator of Amarpal's Estate. The probate proceedings remain pending.

¶ 8    Purab, both individually and on behalf of the Estate, joined with Mayher to file a complaint against defendants. Plaintiffs alleged defendants committed legal malpractice in the creation and presentation of the will and fraudulent misrepresentation in knowingly presenting an invalid will to the court. Plaintiffs also alleged defendants aided and abetted Amarpal in evading orders from the divorce court and disinheriting Purab. Defendants moved to dismiss the complaint under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2020). The circuit court dismissed only the legal malpractice claim.

¶ 9    After discovery, defendants moved for summary judgment as to fraudulent misrepresentation and aiding and abetting on the grounds that plaintiffs lacked evidence to support their claims. Eight days later, plaintiffs' counsel moved to withdraw from the case, and plaintiffs orally moved to voluntarily dismiss the case without prejudice. The circuit court continued the motion to withdraw and denied plaintiffs' motion for voluntary dismissal. 735 ILCS 5/2-1009(b) (West 2024). Ultimately, the circuit court granted summary judgment on the fraudulent misrepresentation and aiding and abetting counts. 735 ILCS 5/2-1005 (West 2024). This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 10                              II. ANALYSIS

¶ 11                      A. Count I – Legal Malpractice

¶ 12   Plaintiffs argue that the circuit court erred in dismissing their legal malpractice claim because defendant attorneys owed a duty to the Estate and damages resulted. Defendants argue they owed no duty. Additionally, they argue plaintiffs have not suffered damages or, alternatively, that the issue is premature as the probate matter is still pending. We review the dismissal of a claim *de novo*. *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12.

¶ 13    The circuit court dismissed the legal malpractice claim because it concluded the complaint failed to allege a duty: "Defendants were never attorneys for the administrators of [decedent's] Estate. They were attorneys for the decedent himself. As such, the Court holds that Defendants did not owe a duty to [the] Estate sufficient to support a claim for legal malpractice."

¶ 14    To state a claim for legal malpractice, a plaintiff must allege that an attorney owed a duty arising from an attorney-client relationship, breached that duty, and that "actual damages proximately result[ed] from the breach." *Warren v. Williams*, 313 Ill. App. 3d 450, 453 (2000). Whether a duty exists is a question of law. *Pelham v. Griesheimer*, 92 Ill. 2d 13, 18-19 (1982).

¶ 15    An attorney owes a professional duty to his client. *Jewish Hospital of St. Louis v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 759 (1994). Under the Illinois Survival Act, an action for an injury resulting from an attorney's professional services may be commenced after a person's death where the injury does not occur until the death of the person for whom the services were rendered. 755 ILCS 5/27-6 (West 2020); 735 ILCS 5/13-214.3(d) (West 2020). In other words, a decedent's estate may commence a malpractice action against an attorney after the death of the decedent-client. *Beastall v. Madson*, 235 Ill. App. 3d 95, 98-99 (1992). In addition to attorneys owing a duty of care to their clients, attorneys hired by estate executors to assist in the administration of an estate also owe a duty to the estate itself. *Estate of Hudson v. Tibble*, 2018 IL App (1st) 162469, ¶ 33.

¶ 16    Here, defendants had two distinct attorney-client relationships. Defendants represented Amarpal and owed him a duty of care. Any malpractice action Amarpal had against his attorneys that would not have created an injury until after his death, such as an action involving his will, survives him and can be brought by his Estate. See *McGill v. Lazzaro*, 62 Ill. App. 3d 151, 154

(1978) (explaining that a legal malpractice action against an attorney survives the death of either party). Additionally, defendants represented the executors in administering the Estate. As attorneys for the executors, defendants owed the Estate a duty.

¶ 17    Defendants assert that it is improper for Purab to bring a claim alleging breach of duty to the Estate because Purab contested the will while defendants represented the Estate. However, Purab contested the will in her individual capacity and now brings a malpractice claim as the administrator of the Estate. The Estate's claim belongs to the Estate, not the administrator individually. Defendants also assert they do not owe a duty because they represented the executors in connection with the Estate before Purab was administrator. Even so, now that Purab is administrator, she can sue to enforce the duty that defendants owed the Estate when representing it through the first set of executors. See *Tibble*, 2018 IL App (1st) 162469, ¶ 26 (showing it was proper for the Estate as plaintiff in a legal malpractice suit to sue an attorney retained by the Estate's previous administrator for breach of the attorney's duty to the Estate). Defendants owed a duty both to Amarpal and his Estate.

¶ 18    In dismissing the claim, the circuit court also concluded the complaint failed to allege damages: "Plaintiffs cannot assert a claim for legal malpractice without showing concrete damages. As the probate matter concerning the decedent's intestacy is still pending, all allegations of damages remain speculative at best."

¶ 19    To recover damages in a legal malpractice case, a client must affirmatively establish they have suffered monetary loss. *Northern Illinois Emergency Physicians v. Landau, Omahana, & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005). "[W]here an attorney's neglect is a direct cause of the legal expenses incurred by the plaintiff, the attorney fees incurred are recoverable as damages."

*Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 355 (1998). Damages are not speculative just because the exact amount is uncertain or yet to be fully determined. *Palmros v. Barcelona*, 284 Ill. App. 3d 642, 647 (1996).

¶ 20 The complaint alleges the Estate suffered monetary loss when defendants "cost the Estate of [Amarpal] hundreds of thousands of dollars in lost legal fees." The complaint alleges that these fees were caused by defendants' negligence when defendants "continued to litigate the question of the fraudulent estate planning documents for many months" "even though they were well aware that no estate planning documents were executed on July 9, 2020." Additionally, the complaint alleges defendants caused delay and additional legal expenses by withdrawing the will "long after they knew or should have known the will was false." The complaint sufficiently alleges the Estate suffered damages when defendants cost the Estate unnecessary legal fees. The Estate, therefore, properly alleged duty and damages, and the circuit court erred in dismissing the Estate's legal malpractice claim.

¶ 21                    B. Count II – Fraudulent Misrepresentation

¶ 22 Plaintiffs argue the circuit court erred in granting summary judgment for defendants on their fraudulent misrepresentation claim. Specifically, plaintiffs argue they established that defendants were culpably ignorant of the will's invalidity and should have known the will and trust contravened Amarpal's intent and the divorce court orders. Further, they argue circumstantial evidence showed defendants intended to induce plaintiffs into accepting the estate plan despite its invalidity. Defendants contend the circuit court did not err because no evidence showed they knew the will was invalid when they offered it to the probate court. They further contend that any failure to investigate the date on the executed will before filing it in probate court did not amount to an

intent to mislead or induce plaintiffs. We review a grant of summary judgment *de novo*. *Coehn v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 23    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "The purpose of summary judgment is to determine whether a triable issue of fact exists." (Internal quotation marks omitted.) *Johnson v. Waterfront Services Co.*, 391 Ill. App. 3d 985, 993 (2009) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). While a plaintiff does not need to prove his case, he must present some evidence that "would arguably entitle him to judgment." *Smith v. Kurtzman*, 176 Ill. App. 3d 840, 846 (1988). "Mere speculation is not enough ***." *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007).

¶ 24    Fraudulent misrepresentation consists of a "(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980). Since all five elements of fraudulent misrepresentation must be established, the absence of evidence on any element will warrant summary judgment. See *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15.

¶ 25    The defendant's knowledge that their statement is false is generally required for a claim of fraudulent misrepresentation. *Park v. Sohn*, 89 Ill. 2d 453, 459 (1982). Here, no evidence suggests defendants knew the will was invalid when they presented it to the probate court. In fact, plaintiffs alleged that defendants did not investigate the will and trust's validity until after their submission

to probate. Further, plaintiffs admitted in depositions that nothing shows defendants knew or believed the estate documents or planning questionnaire did not reflect Amarpal's true intent. Additionally, defendants did not have knowledge of the divorce court orders the will and trust purportedly violated because they never received or read the orders.

¶ 26    Rather, plaintiffs claim that, based on the information defendants had, failing to investigate matters further rendered them culpably ignorant. "[R]epresentations made in reckless disregard or culpable ignorance of their truth or falsity" will also support an action for fraudulent misrepresentation. *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 602 (1998); see also *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 194 (1989) (explaining that it is reasonable to conclude a party acted with a reckless disregard for the truth when the party's misrepresentation concerned documents within their "exclusive control"). Specifically, plaintiffs argue defendants should have known the will was not actually executed on the listed date of July 9 because defendants made revisions after that date. Other than the date on the signed will, however, plaintiffs did not show any other fact that would have signaled to defendants that the will was invalid.

¶ 27    Plaintiffs similarly argue that because defendants knew of Amarpal's divorce proceedings, they should have pursued the divorce court file as part of their preparation of the will. However, Amarpal told defendants that the divorce proceedings concerned only his life insurance policies and retirement accounts which would not be included in his estate plan. Defendants did not pursue the documents themselves to verify. Even assuming defendants should have inquired further to confirm the date on the will or seek the divorce court orders before submitting the will to probate, a claim of what defendants should have done is akin to a claim of negligence. Fraudulent

misrepresentation, however, is more than just mere negligence. See *Cokinis v. Maywood-Proviso State Bank*, 81 Ill. App. 3d 1057, 1064-65 (1980) (holding that an attorney overlooking a detail in a series of revolving loans spanning multiple documents was "understandable," not "deceitful or reckless," and "negligent at most, not fraudulent"); see also *Viemont v. Dison*, 407 Ill. App. 3d 1197, 15 (2011) (table) (unpublished order under Illinois Supreme Court Rule 23) ("The worst one could say is that, in this case, [defendant] was not diligent enough ***." "It is arguable that [defendant] breached the standard of care applicable to an attorney. *** It is not arguable, however, that the advice was fraudulent."). "[I]ndolence and folly" or "careless indifference" also do not amount to fraudulent misrepresentation. (Internal quotation marks omitted.) *Broberg v. Mann*, 66 Ill. App. 2d 134, 144 (1965).

¶ 28    Additionally, a fraudulent statement must be made "for the purpose of inducing the one to whom the statement is made to act." *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 323 (1986). The inducement element, therefore, requires an affirmative intent. *Miller v. Willaim Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 650 (2001). No evidence suggests defendants had the affirmative intent to induce plaintiffs to act based on a false statement. The defendants' depositions show they understood they had a duty as attorneys for the Estate to submit the will and trust to the probate court. In doing so, defendants believed they were acting in line with their duty. Plaintiffs adduced nothing indicating defendants had any contrary intent. Even if, as plaintiffs argue, defendants also had a duty to conduct their own investigation into the will before submitting it, this does not establish an affirmative intent to induce plaintiffs with false statements. Since plaintiffs failed to produce any evidence on these two elements of fraudulent misrepresentation, the circuit court did not err in granting summary judgment for defendants.

¶ 29                    C. Count III – Aiding and Abetting

¶ 30    Plaintiffs argue the circuit court erred in granting summary judgment for defendants on their claim of aiding and abetting because defendants assisted in a wrongful act by helping Amarpal violate the divorce court orders and disinherit Purab. Plaintiffs also argue that because their civil conspiracy case against the will's executors remains ongoing, the court should stay this matter pending resolution of that case. Defendants contend that they were unaware of the divorce court orders, and, regardless, the pour over will and trust did not violate the orders. As to disinheriting Purab, defendants contend there was nothing wrong with creating a will and trust that reflected Amarpal's intent to leave everything to his daughter, Mayher. We review a grant of summary judgment *de novo*. *Coehn*, 2017 IL 121800, ¶ 17.

¶ 31    A claim for aiding and abetting requires that: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987). An aiding and abetting claim, like a civil conspiracy claim, however, is not an independent tort. *Chadha v. North Park Elementary School Ass'n*, 2018 IL App (1st) 171958, ¶ 58. Rather, it is liability based in a concert of action. *Wolf*, 153 Ill. App. 3d at 495-96. Aiding and abetting, therefore, requires underlying conduct that is tortious, breaches a fiduciary duty, or violates a statute. *Id.*; *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28 (2003); *M.U. by and Through Kelly U. v. Team Illinois Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶¶ 18, 45-46.

¶ 32    There is no evidence indicating the will and trust violated any divorce court orders. The

parties agree that some orders prevented Amarpal from altering the beneficiaries of his life insurance policy and retirement accounts. But according to defendants' depositions and the pleadings, the parties understood the will and trust would not have any effect on those matters because they were governed by separate contracts. Plaintiffs alleged that another order from the divorce court prohibited Amarpal from transferring or otherwise disposing of his assets in India, but there is no evidence of this order. It was never produced to the circuit court and is only quoted in the complaint.

¶ 33 Further, plaintiffs concede that defendants never saw any divorce court orders prior to Amarpal's death, but they argue defendants' knowledge that Amarpal was in divorce proceedings should have put defendants on implied notice of the specific orders. But an aiding and abetting claim requires evidence of actual knowledge. See *Johnson v. Filler*, 2018 IL App (2d) 170923, ¶ 21 (explaining that the aiding and abetting cases require actual knowledge, "not constructive knowledge"). Ultimately, defendants withdrew the will. Since the terms of the will never came into effect, there is no evidence to suggest defendants aided in a wrongful act which caused an injury.

¶ 34 Plaintiffs also argue that defendants aided in wrongfully disinheriting Purab under Illinois law. Defendants advised Amarpal that Purab, if left with nothing, could potentially reach his assets regardless of his will if they were still married at his death. Amarpal told defendants that Purab would receive money from his life insurance policy and retirement accounts that would be unaffected by his will. Therefore, Purab would not be completely disinherited, and defendants did not knowingly assist in wrongfully disinheriting her. Further, since the will never came into effect, Purab was not disinherited, and defendants did not aid in a wrongful act which caused an injury.

Plaintiffs failed to provide evidence for their aiding and abetting claim, so the circuit court did not err in granting summary judgment.

¶ 35     D. Counsel's Motion to Withdraw and Plaintiffs' Motion to Voluntarily Dismiss

¶ 36     Plaintiffs argue that the circuit court erred when it failed to rule on plaintiffs' counsel's motion to withdraw. Defendants contend it was within the circuit court's discretion to continue the motion to avoid delaying the case. The circuit court never ruled on plaintiffs' counsel's motion to withdraw, and counsel proceeded to file a response to defendants' motion for summary judgment. "The party filing a motion has the responsibility to bring it to the trial court's attention and have it resolved." *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., and Co.*, 349 Ill. App. 3d 178, 187 (2004). When a motion is not ruled on, it is presumed abandoned or waived. *People v. Brusaw*, 2023 IL 128474, ¶ 18; see *People v. Hall*, 114 Ill. 2d 376, 414 (1986) ("Because the defendant did not obtain a ruling on the question, he cannot now complain that the court erred.").

¶ 37     Plaintiffs also argue that the circuit court abused its discretion in denying plaintiffs' motion to voluntarily dismiss the case without prejudice. Defendants argue it was within the circuit court's discretion to deny plaintiffs' voluntary motion to dismiss when defendants' motion for summary judgment was pending.

¶ 38     The denial of a motion for voluntary dismissal, when made in the face of a pending motion that can result in the final disposition of the case, is reviewed for abuse of discretion. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 66-67 (1990); *Quigg v. Walgreen Co.*, 388 Ill. App. 3d 696, 699 (2009). The circuit court has discretion to deny a motion for voluntary dismissal to prevent undue delay and abuse of judicial resources by avoiding a decision on the merits. *Fumarolo*, 142 Ill. 2d at 68; *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488,

¶ 54.

¶ 39    Here, plaintiffs' motion for voluntary dismissal was made eight days after defendants filed their motion for summary judgment, which could dispose of the case. Nearly three years had passed since the case was first filed, and the parties had already undergone discovery. Given the age of the case and the pending dispositive motion, the circuit court acted within its discretion in denying the motion for voluntary dismissal.

¶ 40                                   III. CONCLUSION

¶ 41    The judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded.

¶ 42    Affirmed in part, reversed in part, and remanded.