2026 IL App (4th) 250477

NO. 4-25-0477

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| AMBER JORDAN, as Administrator for the Estate of | ) | Appeal from the |
| Julian Jordan, Deceased, | ) | Circuit Court of |
| Plaintiff, | ) | Marshall County |
| v. | ) | No. 23LA13 |
| JANET L. JORDAN, | ) | |
| Defendant-Appellee | ) | Honorable |
| (Jared Gibbs, as Independent Administrator for the Estate | ) | Paul E. Bauer, |
| of Julian Jordan, Deceased, Appellant). | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court, with opinion.
Justice Knecht concurred in the judgment and opinion.
Justice Harris dissented, with opinion.

**OPINION**

¶ 1　　　　Plaintiff, Amber Jordan, filed a complaint against, defendant, Janet L. Jordan, for the death of Julian Jordan, plaintiff's son and defendant's grandson, who died from a gunshot wound while staying overnight with defendant. Although plaintiff identified herself as administrator of Julian's estate, no estate had been opened, and she had never been appointed special administrator of Julian's estate. Plaintiff's second amended complaint alleged two theories of liability, premises liability and willful and wanton conduct. While this case was pending, Amber died. Thereafter, defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)), arguing plaintiff's claim was a nullity because she was never appointed administrator of Julian's estate and no estate had been opened or special administrator appointed before the statute of limitations expired for a wrongful death claim. Jared

Gibbs, Julian's biological father, who was now represented by the same attorney as Amber, filed a response to the section 2-619 motion to dismiss, as well as a motion for leave to substitute as plaintiff and leave to file a third amended complaint. After extensive briefing of the issues, the trial court granted the section 2-619 motion to dismiss with prejudice. Although the notice of appeal was filed with Amber listed as plaintiff-appellant, Jared comes before this court arguing that the trial court erred in granting defendant's section 2-619 motion to dismiss because "plaintiff's proposed third amended complaint relates back to her timely filed complaint," "failure to timely appoint an estate administrator is a procedural defect that can be cured after the limitations period expires," and plaintiff's third amended complaint cured the procedural defects in the original complaint. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3                      A. The Initial Pleadings and Proceedings

¶ 4          This case arises from the death of 13-year-old Julian Jordan, who died as a result of a gunshot wound to the head while staying overnight at defendant's house in Edelstein, Illinois. On December 15, 2023, plaintiff filed a complaint, identifying herself as "AMBER JORDAN, ADMINISTRATOR FOR THE ESTATE OF JULIAN JORDAN, DECEASED," seeking damages from defendant for premises liability. She alleged defendant "permitted and allowed multiple unlocked and loaded guns to be placed in various places in and upon the premises"; Julian stayed overnight at defendant's house on or about August 17, 2022; in the early morning hours, Julian was found deceased due to a gunshot wound to his head from a .22-caliber revolver owned by defendant; and defendant was present in the house at the time of the shooting.

¶ 5          Defendant filed a motion to dismiss pursuant to section 2-615 of the Code (*id.* § 2-615), arguing the complaint contained mixed allegations of negligence and willful and wanton

conduct in a single count. Defendant's motion was granted. Plaintiff was granted leave to file an amended complaint, and subsequently, a second amended complaint. In her second amended complaint, plaintiff alleged two theories of liability against defendant. Count I alleged premises liability (citing the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2022)), claiming, *inter alia*, defendant failed to exercise reasonable care on her property or maintain her property in a reasonable safe condition when she allowed Julian to have access to unlocked and loaded guns without supervision; should have known Julian would not appreciate the danger presented by the guns; knew Julian was at risk for self-harm when she received texts from him before his death indicating he was considering harming or killing himself; and was present in the home when Julian was found deceased with a gunshot wound to the head. Count II alleged willful and wanton conduct, "pled in the alternative," claiming, *inter alia*, defendant acted recklessly and/or willfully in allowing Julian access to guns when she knew he would not appreciate the danger and was at risk for self-harm.

¶ 6        On June 6, 2024, defendant filed a section 2-615 motion to dismiss the second amended complaint, arguing plaintiff failed to allege sufficient facts to support her claims, including failing to describe the manner in which Julian received the gunshot wound that killed him or facts supporting that defendant had heightened knowledge, as required for willful and wonton conduct. The following day, plaintiff filed a response, contending the allegations in the complaint were pled with sufficient specificity and the distinct legal theories supported "claims for both negligence and willful and wanton conduct under Illinois law" and justified the repetition of certain allegations in each count.

¶ 7        On July 3, 2024, defendant's attorney filed a suggestion of death pursuant to section 2-1008 of the Code (735 ILCS 5/2-1008 (West 2022)), notifying the trial court that Amber had

died on June 29, 2024, and stating, "[T]he Plaintiff is hereby notified of rights and obligations arising under said statute." The record contains no response filed by plaintiff to this notice.

¶ 8                                   B. The Proceedings After Amber's Death

¶ 9             The record shows a status conference was held on August 2, 2024. Although there is no report of any proceedings that may have taken place that day, the written order, entered by agreement of the parties, stated a case management conference was set for October 22, 2024, and defendant's section 2-615 motion to dismiss was "continued generally."

¶ 10            On October 21, 2024, defendant filed a section 2-619 motion to dismiss plaintiff's second amended complaint. *Id.* § 2-619. In support, defendant contended plaintiff "incorrectly averred and incorrectly named as a purported Plaintiff entity, the following: " 'AMBER JORDAN, ADMINISTRATOR FOR THE ESTATE OF JULIAN JORDAN, DECEASED,' when in fact it appears that no such entity ever existed." Defendant argued plaintiff did not reference in or attach to her complaint any court order appointing her as representative of Julian's estate. Defendant argued further she had not located any court probate action or other civil court order appointing plaintiff as the administrator or personal representative of any estate. She contended, therefore, that plaintiff's lawsuit was a nullity at the time it was filed. In further support of her contention that plaintiff's complaint should be dismissed, defendant argued no estate was opened or wrongful death representative appointed after the filing of the complaint and before the two-year statute of limitations expired on August 17, 2024. Defendant did not include any supporting documentation with her motion.

¶ 11            On October 22, 2024, the parties appeared for a status hearing. Plaintiff's attorney informed the court he had previously petitioned the probate court to appoint Mark Smith, an "employee" of his law firm, as the administrator of Julian's estate. He also informed the court that

- 4 -

his law firm had been retained by Jared Gibbs, Julian's biological father, and had filed a new petition with the probate court to appoint Jared as the administrator of Julian's estate. That matter was still pending in probate court. Defense counsel responded, "[M]y position is that [it] should have been done before the two-year anniversary after the young boy's death. I filed a [section 2-619] motion yesterday." Plaintiff's counsel commented,

> "I don't think there is any question that the administrator of the estate only needs to be established at the time that there's a judgment or ruling.
>
> At the time of filing, Amber was alive *** when it was filed. She, since the filing of the lawsuit, committed suicide.
>
> So, there was a question of who should be the administrator. I contacted the two sisters of Amber, neither of which wanted to be appointed or wanted to even continue with the case.
>
> I then got sort of a weird e-mail from one of them saying that she wanted to be the administrator of the estate now. She had changed her mind. And in the meantime, [Jared] and my office have a contract now to represent [Julian's estate]."
>
> So we are representing Jared as the administrator of the estate, and we have a petition. My suggestion to the Court would be to put this off until we get a ruling from the probate court, which may address counsel's issues."

Defense counsel reiterated his position that "I think it's too late. We need to get that to a head at some point in time in front of [Y]our Honor." Plaintiff's counsel responded that seemed like a "waste of time" because "[i]f Jared is appointed to replace Amber, then your issue is moot." Defense counsel retorted, "I 100 percent disagree. But we are not here to argue it yet until it's briefed."

¶ 12　　　　The case was continued until November 19, 2024. On that date, the trial court set a briefing schedule for defendant's section 2-619 motion to dismiss and set the matter for a status conference on January 21, 2025.

¶ 13　　　　On December 11, 2024, the following documents were filed: (1) a response to defendant's section 2-619 motion to dismiss the second amended complaint and (2) a motion for leave to substitute plaintiff and for leave to file third amended complaint. Both of these documents now identified the plaintiff in this case as "JARED GIBBS, ADMINISTRATOR FOR THE ESTATE OF JULIAN JORDAN, DECEASED."

¶ 14　　　　In the response to defendant's motion to dismiss, Jared stated, "The complaint was originally filed by Julian's mother, Amber Jordan, within the two-year statute of limitations from the date of death and was timely filed pursuant to the wrongful death act." He then stated Amber died in June 2024, and he was appointed the administrator of Julian's estate in December 2024. Jared argued because the original lawsuit was filed within the two-year statute of limitations and he now had been appointed the administrator of Julian's estate, the relation-back doctrine allowed for his substitution as plaintiff, and as such, the motion to dismiss should be denied.

¶ 15　　　　In his motion for leave to substitute plaintiffs and leave to file a third amended complaint, Jared stated the following: "[T]his wrongful death action was filed by Amber Jordan, as the mother of Julian Jordan, deceased, on December 15, 2023." He argued that pursuant to section 2-1008 of the Code, "this action survives Amber Jordan's passing." The motion stated Jared Gibbs, Julian's father, was appointed representative of Julian's estate on December 4, 2024, and as a result of Amber's death and "the substitution of Jared Gibbs as Administrator of the Estate of Julian Jordan, Plaintiff moves for leave to amend his third amended complaint." Attached to the motion was an order appointing Jared Gibbs as "independent administrator" of Julian's estate in

Peoria County Probate Division case No. 24-PR-228 and a proposed third amended complaint. The proposed third amended complaint changed plaintiff's name to Jared Gibbs, as administrator of the estate of Julian Jordan, repeated counts I and II (alleging premises liability and willful and wanton conduct), and added a new claim in count III for wrongful death and citing the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2022)).

¶ 16　　　　The parties filed briefs and further responses to the pending pleadings, and a hearing was held on March 26, 2025.

¶ 17　　　　　　　　　　　C. The Trial Court's Ruling

¶ 18　　　　On April 7, 2025, the trial court issued a written decision, stating that the pending motions were (1) defendant's section 2-619 motion to dismiss plaintiff's second amended complaint and (2) plaintiff's motion for leave to file a third amended complaint. The court did not refer to the motion for leave to substitute plaintiffs as pending before the court.

¶ 19　　　　In this decision, the trial court took judicial notice of Peoria County case No. 24-PR-228 and described certain information from that case as follows:

> "The Court finds that on 08/13/2024 a Petition was filed seeking to appoint Mark Smith as independent administrator of the Estate of Julian Jordan. Mark Smith is an employee of the law firm representing Amber Jordan, Administrator of the Estate of Julian Jordan. It is interesting to note the affidavit of Mark Smith stated he had no financial interest in the estate, but he did not assert that the law firm for which he worked was taking the case *pro bono*. On 10/9/2024 Janet Jordan filed an objection to the Petition. On 10/10/2024, after a hearing on the petition, Judge Mack denied the Petition upon the objection of Janet Jordan. On 10/18/2024 an Amended Petition was filed seeking to appoint Jared Gibbs, biological father of Julian Jordan

as the administrator of Julian's Estate. The Amended Petition alleged that the assets of the Estate were $0.00, which would have allowed for, by this Court, appointment of a special administrator under the Wrongful Death Act. On 12/04/2024 the Petition was granted."

¶ 20    The court then went on to find plaintiff failed to allege a claim under the Wrongful Death Act in any of the complaints filed before the court, noting,

"For the first time, in Plaintiff's Motion to File the Third Amended Complaint, does the complaint sought to be filed add a count for Wrongful Death. Like earlier complaints, Count I is based in Premises Liability, Count II is Reckless/Willful and Wanton Conduct and the newly added Count III asserts that Janet is liable under the Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.*). Plaintiff's Motion for Leave to File the Third Amended Complaint is also a subject to this hearing."

¶ 21    The trial court further found plaintiff failed to seek appointment of a special administrator for Julian's estate under the Wrongful Death Act or any other potentially applicable law during the two-year statute of limitations, and defendant advised plaintiff of the need for a special administrator, even filing the suggestion of death upon Amber's death. The trial court concluded that dismissal was warranted because plaintiff "should not be allowed to forego [*sic*] the very important requirement of the Code of Civil Procedure which requires legal capacity to sue." The case was dismissed with prejudice.

¶ 22    This appeal, filed in the name of Amber, as administrator of the estate of Julian, followed.

¶ 23                                    II. ANALYSIS

¶ 24                                    A. Jurisdiction

¶ 25        The unusual circumstances that bring this case before the court require us to first address the matter of jurisdiction. See *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶ 12 (explaining a reviewing court has a duty to *sua sponte* consider its jurisdiction and dismiss an appeal if jurisdiction is lacking). The notice of appeal filed in this case identified Amber, as administrator of Julian's estate, as plaintiff-appellant and was signed by plaintiff's attorneys as representing Amber in this capacity. However, the parties concede and the record supports that Amber was never appointed administrator of Julian's estate by any court and she died in June 2024 before any rulings were made on the relevant motions pending before the trial court. It is well established that a deceased person cannot be a party to a lawsuit. See *Keller v. Walker*, 319 Ill. App. 3d 67, 70 (2001) ("A deceased person cannot be a party to a suit because such is a nonexistent entity and the proceedings are void *ab initio*."). Likewise, an estate does not have the capacity to prosecute an appeal. See *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 32 ("The well established rule in this state is that an estate lacks the capacity to sue or be sued, and any action must be brought by the executor or representative of the estate."). Furthermore, the death of an independent administrator of an estate terminates the authority of the attorney to act further on behalf of the estate. *Castaneda v. Ingram*, 2018 IL App (1st) 170065, ¶ 13. Thus, Amber cannot be a party to this appeal in any capacity. However, in this case, we have the unique situation where another individual, Jared, was later appointed independent administrator of Julian's estate in separate proceedings (probate court), was represented by the same counsel as Amber, and sought a substitution as plaintiff in this proceeding after Amber's death. Despite the misnomer in the notice of appeal and the fact that Jared was never granted leave to substitute as plaintiff by the trial court, Jared, as the subsequently appointed independent

administrator of Julian's probate estate, is seeking review of the trial court's ruling in this appeal.

¶ 26 Although jurisdictional, it is generally accepted that a notice of appeal should be liberally construed. *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 39. Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides a notice of appeal "may be filed by any party or by any attorney representing the party appealing, regardless of whether that attorney has filed an appearance in the circuit court case being appealed." Further, the powers of this reviewing court include the discretion to allow substitution of parties due to death or to allow new parties to be added on such reasonable notice as it may require. Ill. S. Ct. R. 366(a)(2) (eff. Feb. 1, 1994). "The purpose of a notice of appeal is to inform the prevailing party in the trial court that the other party seeks review of the judgment." *People v. Smith*, 228 Ill. 2d 95, 104-05 (2008). We conclude this purpose was fulfilled, and we have jurisdiction to consider the appeal of the trial court's decision by Jared, as administrator of Julian's estate, *to the extent that the decision impacted his potential claims*.

¶ 27 B. Issue Before This Court

¶ 28 The primary issue before this court is whether the trial court erred in denying Jared, as independent administrator of Julian's estate, leave to substitute as plaintiff after Amber's death. Although the court did not expressly state Jared's motion was denied, after hearing extensive argument on all pending matters, including the issue of substitution, the court dismissed the case with prejudice, thus *ipso facto* disposing of all motions pending at the time of its decision. See *Fabian*, 2014 IL App (1st) 141576, ¶ 12 (finding dismissal of a complaint with prejudice a final and appealable order as it indicates amendment of the pleadings will not be allowed, "thereby terminating the litigation").

¶ 29 Despite being the primary focus of the trial court's decision, the dismissal of the

second amended complaint is not reviewable except to the extent that the trial court dismissed the case with prejudice and affected Jared's aforementioned potential claims. Amber was the plaintiff of record when the second amended complaint was filed in the trial court. Because she was deceased, Amber was no longer a party to the case when that decision was made, and as previously stated, she cannot be a party to this appeal. Insofar as plaintiff's law firm represented Amber as the purported administrator of Julian's estate, that representation ended upon her death. See *Castaneda*, 2018 IL App (1st) 170065, ¶ 13. To the extent that plaintiff's law firm represented Amber in any individual capacity, that likewise ended upon her death. See *Robison v. Orthotic & Prosthetic Lab, Inc.*, 2015 IL App (5th) 140079, ¶ 12 ("[T]he attorney-client relationship is terminated by the death of the client, and thereafter, the authority of the attorney to represent the interests of a deceased client must come from the personal representatives of the decedent."). We take exception with plaintiff's law firm filing pleadings and otherwise appearing to represent Amber in *any* capacity after her death, as it was inappropriate to do so. Similarly, it was inappropriate for plaintiff's law firm to purport to represent the estate at any time during these proceedings when there was, in fact, no administrator of the estate established. See *Estate of Hudson v. Tibble*, 2018 IL App (1st) 162469, ¶ 32 ("[W]hen an attorney is retained by an administrator for the purpose of administering the estate, its client is in actuality the administrator and the estate due to the symbiotic nature of their concurrent existence. The administrator only acts to serve the estate, and the estate cannot act but through the name of the administrator."); *City of Rockford v. Joudeh*, 2023 IL App (4th) 220036-U, ¶¶ 61-62 (denying the estate's motion to add the independent administrator of the estate as a party to the appeal and declining to address any arguments raised by the estate on appeal based on its legal incapacity to prosecute the appeal).

¶ 30                                  C. Standard of Review

- 11 -

¶ 31    The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact early in the litigation. *Glasgow v. Associated Banc-Corp.*, 2012 IL App (2d) 111303, ¶ 12. A defendant who seeks relief under section 2-619 of the Code admits as true all well-pleaded facts in the complaint, along with all reasonable inferences that can be gleaned from those facts. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. The defendant asserts, instead, that the plaintiff's claim is barred by a ground specified in the Code or other affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619 (West 2022). A trial court's ruling on a 2-619 motion to dismiss is reviewed *de novo*. *Süd Family Ltd. Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782, ¶ 41. Further, this court may affirm the dismissal of a plaintiff's claim on any ground supported by the record, regardless of the trial court's reasoning. *Id.*

¶ 32    When a party is misidentified, as in this case, the trial court's decision to allow substitution of a party plaintiff is within the court's sound discretion. *BMO Harris Bank, N.A. v. Malarz*, 2021 IL App (2d) 190984, ¶ 17. However, the question of whether the amendment of a pleading to allow substitution of a party relates back to the filing of the original complaint is reviewed *de novo*. *Id.*

¶ 33    D. Denial of Jared's Motion to Substitute Plaintiffs

¶ 34    Jared argues the trial court should have permitted him to be substituted as plaintiff to represent Julian's estate after Amber's death and file an amended complaint. In his brief, Jared puts the cart before the horse by arguing the *merits* of his proposed third amended complaint, a matter not before this court at this time. In support of his contention that he should have been substituted as plaintiff, Jared relies upon the relation-back doctrine (735 ILCS 5/2-616 (West 2022)). He contends the failure to timely appoint an administrator of Julian's estate was a

"procedural defect" that could have been cured even after the statute of limitations period expired, and his subsequent appointment as administrator by the probate court should relate back to the timely filing of Amber's original complaint. However, before we can address the application of the relation-back doctrine, we must first consider what impact the following facts have on the viability of the claims arising from Julian's death: (1) Amber's death in June 2024 during the pendency of the case and (2) Jared's appointment as independent administrator of Julian's probate estate over five months after Amber's death and four months after the statute of limitations tolled as to claims for Julian's wrongful death.

¶ 35                    1. *Impact of Amber's Death on Pending Litigation*

¶ 36            It is undisputed and the record supports that Amber's original complaint was filed within the statute of limitations and her second amended complaint was pending at the time of her death. Amber's second amended complaint alleged two separate theories of negligence against defendant, which she claimed resulted in Julian's death (premises liability and willful and wanton conduct). It is further undisputed that Amber filed the complaint purporting to be doing so as administrator of Julian's estate, but she was not, in fact, administrator of Julian's estate at any time prior to her death. Still, Amber's effort to make the claim in this manner (based on allegations of negligence resulting in an individual's death and brought as a purported representative of that individual's estate) supports the conclusion that she was making a colorable claim under the Wrongful Death Act because it is the only avenue in Illinois for making these types of claims. See 740 ILCS 180/1 (West 2022) (establishing a cause of action when a person's death is caused by the wrongful act, neglect, or default of another); *Miller v. American Infertility Group of Illinois, S.C.*, 386 Ill. App. 3d 141, 144 (2008) (noting a cause of action for wrongful death is established by statute and did not exist at common law); *Cushing v. Greyhound Lines*, *Inc.*, 2012 IL App (1st)

- 13 -

100768, ¶ 92 (explaining a wrongful death cause of action must be brought by, and in the name of, the administrator of the decedent's estate who possesses the sole right of action or control over the lawsuit).

¶ 37 Despite her representation to the contrary, Amber filed this lawsuit without being named administrator of Julian's estate. Thus, she did not have the capacity to sue defendant for Julian's wrongful death because such a claim cannot be brought by an individual. "[T]here is no proper plaintiff where the person named in the caption as the administrator of the decedent's estate was not properly appointed." *Nagel v. Inman*, 402 Ill. App. 3d 766, 770 (2010). Notably, because no estate had been opened for Julian in probate court, Amber *could have* petitioned the trial court at any time prior to her death to be appointed as special administrator of his estate. See 740 ILCS 180/2(a), 2.1 (West 2022); *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶ 44 (finding a widow, who filed suit against deceased husband's caregiver in her individual capacity, was subsequently appointed special administrator of his estate after the statute of limitations had tolled, and filed an amended complaint reflecting her appointment as special administrator, could maintain a wrongful death claim because her appointment related back to the filing of the original complaint). However, Amber did not do so.

¶ 38 Therefore, when Amber died in June 2024, the status of the case was as follows: an individual plaintiff who was never properly appointed as special administrator of an estate of a decedent had a wrongful death claim pending. Stated another way, there was no proper plaintiff in this case when Amber died. We note that plaintiff's law firm misguidedly continued to file pleadings and otherwise appear in court to represent Amber and/or Julian's estate even though Amber was deceased and no administrator had been appointed to Julian's estate. We conclude Amber's claims died with her and the proceedings became void *ab initio*. See *Keller*, 319 Ill. App.

- 14 -

3d at 70.

¶ 39    2. *Jared's Subsequent Appointment as Independent Administrator*

¶ 40    Without acknowledging the impact of Amber's death on the proceedings below, Jared contends his appointment as independent administrator of Jared's estate over five months after Amber's death and four months after the statute of limitations tolled as to claims for Julian's wrongful death should have been deemed to have cured the "procedural defect" of "failing to timely appoint an estate administrator." This argument fails.

¶ 41    The relation-back doctrine provides, in relevant part, that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been *joined* as plaintiff." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2022). It also allows for the amendment of pleadings in a timely filed lawsuit if the cause of action asserted in the amended pleadings grew out of the same transaction or occurrence as the original pleading. *Id.* § 2-616(b). The relation-back doctrine "is remedial in nature and should be applied liberally to favor hearing a plaintiff's claim." (Internal quotation marks omitted.) *Lawler v. The University of Chicago Medical Center*, 2016 IL App (1st) 143189, ¶ 46. The key language pertinent here is to protect a *plaintiff's* claim.

¶ 42    As Jared has noted, courts have consistently held the relation-back doctrine applies when a plaintiff filed a wrongful death complaint in his or her individual capacity and later, even after the tolling of the statute of limitations, *that plaintiff* is appointed administrator of the estate. However, these cases are distinguishable from the instant case because Jared was not, in fact, the plaintiff who originally filed the complaint and was seeking relation back to protect his claim after being appointed administrator of the estate. See *Mankowski*, 2014 IL App (2d) 140154, ¶ 44; *Pavlov v. Konwall*, 113 Ill. App. 3d 576 (1983) (finding a plaintiff timely filed a wrongful death

claim purporting to be administrator of decedent's estate, was not properly appointed as administrator, and eventually was properly appointed special administrator of the estate after the statute of limitations tolled, and therefore, the plaintiff's second amended complaint related back to the time of the filing of the original complaint); *Palm v. Sergi*, 2022 IL App (2d) 210057 (finding a plaintiff, who filed suit on behalf of the decedent's trust despite that she had not been appointed as trustee, was later appointed as a trustee; thus, her amended complaint related back to the filing of the original complaint); *Marcus v. Art Nissen & Son, Inc.*, 224 Ill. App. 3d 464 (1991) (finding a lawsuit filed in the name of a husband and wife, where husband was deceased, was not a nullity as to the husband and the wife, who was an original plaintiff, should have been allowed to also substitute as representative of the husband's estate after being appointed administrator and the amended complaint related back to the original filing); *Lopez v. Oyarzabal*, 180 Ill. App. 3d 132 (1989) (finding a father's appointment as administrator of his son's estate related back to the date of the father's filing of the original complaint in his individual capacity); see also *Wolf v. Redmore*, 142 Ill. App. 3d 770 (1986); *Redmond v. Central Community Hospital*, 65 Ill. App. 3d 669 (1978).

¶ 43        Jared's reliance on *In re Estate of Kleine*, 2015 IL App (2d) 150063, to support his contention that his later appointment as independent administrator of Julian's estate should still cure a "defect" in the pleading filed by Amber is similarly misplaced. In *Kleine*, Nancy Kleine died in March 2012, and her probate estate was opened, with Richard Calkins appointed special administrator, in January 2013. *Id.* ¶ 3. In March 2014, Nancy's husband, Jim Kleine, filed a civil complaint alleging, *inter alia*, a claim for wrongful death against the defendants. Jim brought the lawsuit individually and as special administrator of Nancy's estate, though he had not been appointed the special administrator. *Id.* ¶ 4. Thereafter, Jim filed a motion to be appointed special administrator by the trial court, which was granted. The defendants filed a motion to dismiss

pursuant to section 2-619 of the Code, arguing that the appointment of Jim as special administrator was void because letters of office for the estate had already been issued to Calkins; thus, the court lacked jurisdiction to appoint Jim. *Id.* ¶ 6. The trial court granted the defendants' motion to dismiss but allowed Calkins to file an amended complaint in his capacity as special administrator of Nancy's estate. *Id.* ¶¶ 6-7. The defendants moved to dismiss the amended complaint because it was filed after the statute of limitations period had run and did not relate back to the original complaint. The trial court denied the motion. An interlocutory appeal was granted with the following certified question:

> " 'Whether the relation back doctrine applies when a wrongful death and survival action is timely filed by an improperly appointed special administrator, who was appointed pursuant to the [Wrongful Death] Act despite the fact that letters of office had already issued, pursuant to the Probate Act, to another person who did not bring the action nor substitute in as plaintiff within the statute of limitations?' "
>
> *Id.* ¶ 8.

¶ 44       In determining the relation-back doctrine did apply, the appellate court concluded the situation presented by the certified question was similar to that in *Pavlov*. The *Kleine* court noted that in *Pavlov*, an independent administrator of the estate had already been appointed, and it was determined "that the amended complaint related back because the amended complaint made substantially the same allegations and arose out of the same transaction or occurrence, the estate was always listed as an interested party, and technical rules of pleading should not preclude resolving the case on its merits." *Id.* ¶ 33.

¶ 45       Jared's reliance on the *Kleine* court's statement that "the estate was always listed as an interested party" disregards the important distinction that an estate had been opened and an

independent administrator appointed by the probate court in that case before the wrongful death lawsuit was filed and before the statute of limitations had tolled. The representative of the estate was the only party who could file the claim in that case, and he had been appointed within the statute of limitations. In this case, there was no estate opened and no administrator appointed until December 2024, which was five months after Amber's death and four months after the statute of limitations had tolled. Amber did not have standing to bring the wrongful death lawsuit in this case, and her status was never cured prior to her death. Jared also did not have standing until he was appointed administrator of Julian's estate four months after the statute of limitations tolled for any wrongful death claim.

¶ 46 We note that plaintiff's counsel effectively refers to Amber, as administrator of the estate, and Jared, administrator of the estate, interchangeably, as if the latter would automatically replace the former upon Amber's death. Not only does this overlook the legal implications of the death of a party during a pending litigation, but it also ignores the fact that there was no estate opened for Julian and no administrator appointed to represent any estate until December 2024. It is well settled that an estate is not a natural or artificial person and lacks the legal capacity to sue or be sued. *Castaneda*, 2018 IL App (1st) 170065, ¶ 13. Any action must be brought by the executor or representative of the estate. *Id.* Jared was not involved in this case in any capacity when the original complaint was filed and has never been a plaintiff in this case. It bears repeating that Jared did not have standing to bring a wrongful death claim until he was appointed administrator of Julian's estate. He did not seek appointment as administrator in any court until October 18, 2024, which was over three months after Amber's death and two months after the statute of limitations expired for a wrongful death claim. The probate court's subsequent appointment of an independent administrator after the tolling of the statute of limitations could not

change the fact that there was no valid claim pending in the trial court to relate back to. See generally *Scott v. Skokie Valley Community Hospital*, 54 Ill. App. 3d 766, 767-68 (1977) (holding a probate court lacked the authority to amend the order issuing letters of administration *nunc pro tunc* to change the date of issuance of letters to reflect an earlier date upon which a separate wrongful death complaint had been timely file and noting such an order cannot, "under the guise of correcting its record, put upon it an order or judgment which never in fact had been made or entered").

¶ 47    We acknowledged previously, in agreement with the dissent, that had Amber not died, she could have been appointed as the administrator of Julian's estate and her appointment could have related back to the timely filing of the original complaint. We disagree, however, that her death did not change anything. Therefore, we find the authority relied upon by the dissent distinguishable. Although the relation-back doctrine is to be liberally construed in favor of hearing a plaintiff's claim, it is inapplicable when a plaintiff dies and her invalid claim becomes void *ab initio*. This is more than an "irregularity," and plaintiff's law firm's efforts to find a "replacement" plaintiff after the tolling of the statute of limitations could not cure it. Because Amber died before having a valid claim filed against defendant and Jared's appointment as independent administrator of Julian's estate occurred after the statute of limitations tolled, the relation-back doctrine is inapplicable. We conclude, therefore, the trial court's dismissal of the case with prejudice was proper.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the trial court's judgment.

¶ 50    Affirmed.

¶ 51    JUSTICE HARRIS, dissenting:

¶ 52    I respectfully dissent from the majority's decision. In my view, the relation back doctrine applies to permit the substitution of Jared, as the properly appointed administrator of Julian's estate, as plaintiff and the filing of the proposed third amended complaint. Accordingly, I would reverse the trial court's dismissal of plaintiff's second amended complaint pursuant to section 2-619 of the Code and remand with instructions that the court grant Jared's motion for leave to substitute plaintiff and for leave to file the proposed third amended complaint.

¶ 53    "The relation back statute permits an amended pleading to relate back to the date of the original pleading if the original pleading was timely and the amendment grew out of the same transaction or occurrence set up in the original pleading." *Lawler*, 2017 IL 120745, ¶ 20 (citing 735 ILCS 5/2-616(b) (West 2010)).

> "A liberal construction of the requirements of [the relation back statute] is necessary 'to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.' [Citation.] The purpose of the statute is to preserve causes of action against loss by reason of technical default unrelated to the merits. [Citation.] *** [T]he 'rationale behind the same transaction or occurrence rule is that a defendant will not be prejudiced by an amendment so long as "his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him." ' " *Id.* ¶ 21.

¶ 54    "A wrongful-death action must be filed by a representative of the decedent on behalf of the estate." *Nagel*, 402 Ill. App. 3d at 770. "Ideally, the administrator should be appointed first and the wrongful-death action filed subsequently." *Id.* However, the failure to follow that procedure is not fatal to a cause of action, and "[n]umerous cases have found that where an administrator is appointed after the suit is filed, the appointment will relate back to the time when

the suit was filed." *Id.* This is true even when an administrator has not been appointed on behalf of the estate until well after the statute of limitations for the cause of action has expired. See *Pavlov*, 113 Ill. App. 3d at 579; *Mankowski*, 2014 IL App (2d) 140154, ¶ 56.

¶ 55         In *Pavlov*, 113 Ill. App. 3d at 577, an original complaint was filed, naming William Pavlov as the administrator of the decedent's estate, although Pavlov's appointment as administrator was improper. More than two years after the decedent's death, Pavlov was properly appointed as the administrator and filed an amended complaint. *Id.* The defendant moved to dismiss the action, arguing that since Pavlov was not properly appointed as the administrator of the estate until after the two-year statute of limitations period had expired, he was not a proper party at the outset of the litigation, the original complaint was "a complete nullity," and the relation back doctrine could not apply. *Id.* On review, the First District found Pavlov's "proper appointment *** as administrator did relate back to his initial filing." *Id.* at 580. In so holding, the court stated as follows:

> "Both [the original and amended complaint] make substantially the same allegations and[ ] the cause of action asserted in the amended and original pleadings arose out of the same occurrence or transaction. In both pleadings the estate of [the] decedent has been named as the interested party and it has been clear from the start that Pavlov intended to bring the action as administrator of that estate. That Pavlov was not properly named administrator on the motion of the decedent's heirs until after the limitations period had run is a technical consideration which, in light of [the relation back doctrine], should not prevent the cause from being decided on its merits in furtherance of justice." *Id.* at 579.

- 21 -

¶ 56        More recently, in *Mankowski*, 2014 IL App (2d) 140154, ¶ 47, the Second District reached the same conclusion. There, the original complaint was timely filed but identified the decedent's widow as the administrator of the estate when she had never been so appointed. *Id.* ¶¶ 3-6. Additionally, the record in the case showed no probate estate for the decedent was ever opened. *Id.* ¶ 44. More than four years after the decedent's death, the widow moved for leave to file a petition for the appointment of a special administrator and requested that the appointment relate back to the original complaint. *Id.* ¶ 5. The defendants moved to dismiss the action, asserting that because no special administrator was appointed before the action was filed, the action was invalid and "any subsequent attempt to add a special administrator could not relate back and should fail." *Id.* ¶ 6. The trial court denied the defendant's motion to dismiss, granted the plaintiff's motion, and appointed her as special administrator of the estate. *Id.* ¶ 7. On review, the Second District affirmed, finding that although the plaintiff in her individual capacity could not maintain a wrongful death suit, the action was not subject to dismissal and the court's appointment of the plaintiff as special administrator " 'cured' " the procedural defect. *Id.* ¶ 47.

¶ 57        The majority finds *Pavlov* and *Mankowski* (and multiple other similar cases) distinguishable on the basis that Jared was not "the plaintiff who originally filed the complaint and was seeking relation back to protect his claim." *Supra* ¶ 42. However, in *Kleine*, 2015 IL App (2d) 150063, ¶ 35, the Second District addressed this precise scenario, holding that "whether the amended complaint *added a new party* or the same party in a new capacity does not affect [the] relation-back analysis." (Emphasis added.)

¶ 58        As discussed by the majority, in *Kleine*, a husband sued the defendants, in part, for the wrongful death of his deceased wife. *Id.* ¶ 4. The husband was named in the complaint both individually and as special administrator of the decedent's estate, even though a probate estate had

previously been opened and a different individual, Calkins, appointed as the estate's special administrator. *Id.* ¶¶ 3-4. More than two years after the decedent's death and following the defendants' filing of a motion to dismiss, the trial court allowed Calkins to file an amended complaint as the special administrator of the estate. *Id.* ¶¶ 6-7.

¶ 59    On review, the Second District held that "the relation-back doctrine applies *** where the original complaint was timely filed by an improperly appointed special administrator and the amended complaint substituted in the properly appointed administrator after the limitations period had run." *Id.* ¶ 38. As indicated, in reaching its decision, the court rejected the defendants' contention that the relation back doctrine could not apply when there was a change to the plaintiff's identity rather than simply to his capacity. *Id.* ¶¶ 18, 33-35. The court also found the case before it was like *Pavlov* and *Mankowski* "in that all the amended complaints added a proper plaintiff after the limitations period." *Id.* ¶ 35. In particular, the court noted that for purposes of the Wrongful Death Act, "the *Pavlov* plaintiff had the same authority to file the original complaint as [the husband in the case before it] did: none." *Id.* ¶ 33.

¶ 60    The majority finds Jared's reliance on *Kleine* is misplaced, noting that, there, "an estate had been opened and an independent administrator appointed by the probate court *** before the wrongful death lawsuit was filed and before the statute of limitations had tolled." *Supra* ¶ 45. It emphasizes the fact that, in this case, no estate was opened and no administrator appointed until December 2024, approximately five months after Amber's death and nearly four months after the statute of limitations for a wrongful death action had expired. *Supra* ¶ 45. However, the majority's reasoning ignores the holdings in *Pavlov* and *Mankowski*, where no independent administrators were properly appointed until after the relevant statute of limitations had expired. Significantly, in *Mankowski*, no probate estate was ever opened for the decedent and the decedent's widow did not

- 23 -

move for leave to seek the appointment as a special administrator until more than four years after the decedent's death. *Mankowski*, 2014 IL App (2d) 140154, ¶¶ 5, 44. The majority also overlooks the finding in *Kleine* that the difference between that case and the circumstances in *Pavlov* and *Mankowski*, *i.e.*, the timing of the proper appointment of a representative for an estate, had no effect on the application of the relation back doctrine. *Kleine*, 2015 IL App (2d) 150063, ¶ 35.

¶ 61    Moreover, we note that the majority's precise rationale was also explicitly rejected in another Second District case involving similar issues. In *Jablonski v. Rothe*, 287 Ill. App. 3d 752, 754 (1997), the plaintiffs sued for the wrongful death of a fetus following a motor vehicle accident. The defendant challenged the complaint "on the ground that [the] plaintiffs failed to bring the action as representatives of the decedent's estate," and the plaintiffs filed an amended pleading that added an allegation that they had been appointed as the estate's special administrators. *Id.* The defendant then moved to dismiss the amended complaint on the basis that that the two-year statute of limitations for wrongful death claims had expired before the amended complaint was filed. *Id.* The trial court granted the defendant's motion and dismissed the amended complaint with prejudice. *Id.*

¶ 62    On appeal, the Second District reversed, finding "[t]he amended complaint relate[d] back to the filing of the timely filed original complaint." *Id.* at 757. In so holding, the court rejected the defendant's argument that other cases applying the relation back doctrine under similar circumstances were distinguishable because in those prior cases, "a probate estate already existed at the time the statute of limitations expired." *Id.* at 756-57. The court reasoned as follows:

> "We consider this a distinction without a difference. [The relation back statute] clearly provides that a complaint may be amended to cure the omission of a condition precedent to the right to recover. The statute does not specify a time in

which this must be done. To hold otherwise would be inconsistent with the [statute's] purpose to save causes of action from being lost on technical grounds.

\*\*\*

[The] [d]efendant does not dispute that [the] plaintiffs' original complaint was timely filed or that the cause of action alleged in the amended complaint arose out of the same occurrence as that in the original pleading. [The] [d]efendant does not claim that he has been prejudiced by the amendment. Under these circumstances, the [trial] court erred in dismissing the amended complaint as untimely. The amended complaint relates back to the filing of the timely filed original complaint." *Id.*

¶ 63    Accordingly, the relevant case authority clearly demonstrates that the relation back doctrine is applicable even under circumstances where no probate estate has been opened and no representative of an estate is properly appointed before the two-year statute of limitations for wrongful death claims has expired. Because case authority further shows that "whether the amended complaint added a new party or the same party in a new capacity does not affect [the] relation-back analysis" (*Kleine*, 2015 IL App (2d) 150063, ¶ 35), I find no impediment to applying the relation back doctrine in this case.

¶ 64    The majority also points out that "Amber died before having a valid claim filed against defendant." *Supra* ¶ 47. It states that because there was "no proper plaintiff" when Amber died, "Amber's claims died with her and the proceedings became void *ab initio*." *Supra* ¶ 38. I disagree that Amber's death in this case prohibits application of the relation back doctrine. The relation back statute "specifically precludes amendments to *pending* complaints from being time-barred." (Emphasis added.) *Lawler*, 2017 IL 120745, ¶ 29. Here, neither Amber's death in June

2024, nor the defendant's July 2024 filing suggesting Amber's death pursuant to section 2-1008(b) of the Code, abated or terminated the underlying litigation. See 735 ILCS 5/2-1008(b) (West 2024) (providing for the substitution of a party by court order when that party dies). Instead, the case remained pending.

¶ 65    Notably, in reaching its decision in *Mankowski*, 2014 IL App (2d) 140154, ¶ 46, the Second District cited *McMann v. Illinois Midland Coal Co.*, 149 Ill. App. 427 (1909), as instructive. In *McMann*, the plaintiff sued the defendant to recover damages for personal injuries but then died from unrelated causes. *Id.* at 427-28. An administrator of the plaintiff's estate was appointed and substituted as the party plaintiff. *Id.* Later, the defendant learned that the deceased plaintiff had been a minor when the action was originally filed and "objected upon the ground that it was questionable whether any suit was in existence at the time the administrator was substituted as party plaintiff." *Id.* at 428. Finding no error, the Third District held as follows:

> "The suit having been brought in the name of the minor instead of by his next friend was not subject to be abated or dismissed without leave to amend by substituting some person as next friend, by whom the suit might be prosecuted for the benefit of the minor, and the minor having died before his incapacity to bring suit in his own name was brought to the attention of the court, and an administrator having been duly appointed and substituted as party plaintiff, the suit was not thereafter liable to be abated or dismissed. The commencement of the suit by the minor was a mere irregularity which might have been thereafter cured by the appointment of a next friend to prosecute the suit." *Id.*

¶ 66    I also find *McMann* instructive to the present case. Amber's commencement of the underlying action as the administrator of Julian's estate when she had never been so appointed was

- 26 -

a curable "irregularity." Had Amber not died, she could have been appointed as the administrator of Julian's estate and her appointment would have related back to the timely filing of the original complaint. See *Pavlov*, 113 Ill. App. 3d 576; *Mankowski*, 2014 IL App (2d) 140154, ¶ 56. Additionally, a "new party" that was the properly appointed administrator of Julian's estate could also have been substituted as plaintiff. See *Kleine*, 2015 IL App (2d) 150063, ¶ 35. Amber's death does not change these results where the underlying proceeding remained pending after her death and at the time Jared was properly appointed the administrator of Julian's estate and moved for substitution. See *McMann*, 149 Ill. App. 427.

¶ 67　　　　Ultimately, in this case, Amber's original complaint was timely filed. The cause of action alleged in Jared's amended complaint arose out of the same occurrence as that in the original pleading. Both the original and amended complaints were based on Julian's gun-related death at defendant's residence and alleged that defendant was negligent in allowing unlocked and loaded guns on her property. Finally, defendant identifies no prejudice to her from the substitution of Jared, as the administrator of Julian's estate, as the party plaintiff or from the filing of the third amended complaint. Significantly, the estate and its representative were always identified as interested parties in this matter, and defendant clearly has had notice from the outset of the substance of the allegations against her.

¶ 68　　　　Accordingly, as stated, I would reverse the trial court's dismissal of plaintiff's second amended complaint pursuant to section 2-619 of the Code. Additionally, I would remand with instructions that the court grant Jared's motion for leave to substitute plaintiff and for leave to file the proposed third amended complaint.

***Jordan v. Jordan***, **2026 IL App (4th) 250477**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Marshall County, No. 23-LA-13; the Hon. Paul E. Bauer, Judge, presiding. |
| **Attorneys for Appellant:** | Zane D. Smith, of Zane D. Smith & Associates, of Chicago, and Lynn D. Dowd and Patrick C. Anderson, of Law Offices of Lynn D. Dowd, of Naperville, for appellant. |
| **Attorneys for Appellee:** | John P. Fleming, of Peoria, for appellee. |